UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| TONYA GRAHAM, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 4:14-CV-419 (CEJ) |
| | ) |
| HUBBS MACHINE AND | ) |
| MANUFACTURING, INC. and | ) |
| RICK BENWARD, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

This matter is before the Court on defendants' partial motion to dismiss plaintiff's amended complaint for failure to state a claim for relief, pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has filed a response in opposition, and the issues are fully briefed.

**I.  Background**

For purposes of this motion to dismiss, the court assumes as true all factual allegations in the amended complaint. *See* Magee v. Trustees of Hamline University, 747 F.3d 532, 534 (8th Cir. 2014).

Tonya Graham was employed by defendant Hubbs Machine and Manufacturing, Inc. from February 1996 until her termination in July 2013. At the time of her termination, Graham was vice president of the company, and had worked in that capacity since July 2008.

In May 2013, Rick Benward, a licensed broker employed by New York Life (NY Life), became the president of Hubbs Machine. Benward, through his employment at NY Life, was the third party manager of Hubbs Machine's employee

1

retirement and benefits plan. After Benward joined Hubbs Machine, Graham began voicing concerns to him and to William Hubbs, the CEO and owner of the company, that Benward's concurrent employment with NY Life created a conflict of interest.

On June 10, 2013, Graham contacted a compliance representative at NY Life, who told her that Benward's concurrent employment constituted outside business activity in violation of the Financial Industry Regulatory Authority (FINRA) rules. On June 12, 2013, Graham again confronted Benward with her concerns about his conflict of interest. On June 17, 2013, Benward announced that a new third party manager at NY Life would manage the company's retirement and benefits plan. At the same time, Benward also surrendered his FINRA broker's license.

Graham alleges that immediately afterward, she began suffering retaliation for her complaints, including unwarranted disciplinary actions, reductions of duties and responsibilities, and harassment. On July 29, 2013, Graham received a memo from Benward threatening her employment at Hubbs Machine and a letter from William Hubbs accusing her of engaging in conduct that violated company policies. On July 31, 2013, Graham was terminated from her employment with Hubbs Machine.

In Count I of the amended complaint, plaintiff asserts a claim against defendant Hubbs Machine for wrongful termination in violation of public policy. Plaintiff alleges that she was harassed and ultimately terminated for reporting violations of FINRA rules, ethical codes, and regulations including FINRA Rules 3270, 2010 and those governing conflicts of interest; the Employee Retirement Income Security Act of 1974 (ERISA), including 29 U.S.C. § 1106; and Chapter 409 of the Missouri Revised Statutes governing the regulation of securities, including

Mo. Rev. Stat. 409.810 and 409.5-501, *et. seq.*, and implementing regulations promulgated in 15 CSR 30-51.169 to 30-51.173. In Count II, plaintiff asserts a claim of tortious interference with a business relationship against defendant Benward, alleging that he induced or caused Hubbs Machine to discharge her.

## I. Legal Standard

The purpose of a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure is to test the legal sufficiency of the complaint. The factual allegations of a complaint are assumed true and construed in favor of the plaintiff, "even if it strikes a savvy judge that actual proof of those facts is improbable." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 556 (2007) (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 508 n.1 (2002)); Neitzke v. Williams, 490 U.S. 319, 327 (1989) ("Rule 12(b)(6) does not countenance . . . dismissals based on a judge's disbelief of a complaint's factual allegations"); Scheuer v. Rhodes, 416 U.S. 232, 236 (1974) (a well-pleaded complaint may proceed even if it appears "that a recovery is very remote and unlikely"). The issue is not whether the plaintiff will ultimately prevail, but whether the plaintiff is entitled to present evidence in support of his claim. Id. A viable complaint must include "enough facts to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570; see also id. at 563 (stating the "no set of facts" language in Conley v. Gibson, 355 U.S. 41, 45-46 (1957), "has earned its retirement."). "Factual allegations must be enough to raise a right to relief above the speculative level." Id. at 555.

## II. Discussion

### A. Count I

#### (i) Reporting Violation of FINRA Rules

Defendants first argue that Count I of the amended complaint should be partially dismissed for failure to state a claim, because FINRA is not a well-established and clearly mandated public policy, which is required to support a claim of wrongful discharge under Missouri law. Defendants provide three bases for their argument: (1) FINRA is not a "governmental body" whose rules are capable of classification as public policy; (2) FINRA rules have no regulatory authority over Hubbs Machine; and (3) the FINRA rules cited by plaintiff are too vague and general to constitute clearly mandated public policy.

As a general rule in Missouri, an at-will employee may be terminated by an employer for any reason or for no reason. Taylor v. St. Louis Cnty. Bd. of Election Comm'rs, 625 F.3d 1025, 1027 (8th Cir. 2010) (citing Sivigliano v. Harrah's N. Kan. City Corp., 188 S.W.3d 46, 48 (Mo. Ct. App. 2006)). The at-will employment doctrine, however, is expressly limited by the public policy exception. Fleshner v. Pepose Vision Inst., Inc., 304 S.W.3d 81, 92 (Mo. banc 2010). Under this exception, an "at-will employee may not be terminated (1) for refusing to violate the law or any well-established and clear mandate of public policy as expressed in the constitution, statutes, regulations promulgated pursuant to statute, or rules created by a governmental body or (2) for reporting wrongdoing or violations of law to superiors or public authorities." Id. If an employer terminates an employee for either reason, then the employee has a cause of action in tort for wrongful discharge. Id.[1]

---

[1] Missouri courts have broadened the categories falling within the exception since Fleshner, adding that an employee may bring a cause of action if she is discharged for "(3) acting in a manner public policy would encourage; or (4) filing a claim for worker's compensation." Delaney v. Signature Health Care Foundation, 376 S.W.3d 55, 57 (Mo. Ct. App. 2012) (applying the exception in finding that Missouri encourages organ donation as a matter of public policy).

4

Plaintiff argues that she falls within the second category, commonly referred to as "whistleblowing." "[T]o sustain this type of claim, the 'petition must specify the legal provision violated by the employer, and it must affirmatively appear from the face of the petition that the legal provision in question involves a clear mandate of public policy.'" Misischia v. St. John's Mercy Med. Ctr., 30 S.W.3d 848, 863 (Mo. Ct. App. 2000) (quoting Adolphsen v. Hallmark Cards, Inc., 907 S.W.2d 333, 338–39 (Mo. Ct. App. 1995)), rev'd on other grounds, Ellison v. Fry, 437 S.W.3d 762 (Mo. banc 2014). "The mere citation of a constitutional or statutory provision in a pleading is not by itself sufficient to state a cause of action for retaliatory discharge[;] the plaintiff must demonstrate that the public policy mandated by the cited provision is violated by the discharge." Margiotta v. Christian Hosp. Ne. Nw., 315 S.W.3d 342, 347 (Mo. banc 2010) (citing 82 Am. Jur. 2d § 61). However, it is immaterial to a wrongful discharge action whether the violation of law "results in civil fines, injunctions, or disciplinary action against a professional license." Id. Furthermore, "there is no requirement that the violations that the employee reports affect the employee personally, nor that the law violated prohibit or penalize retaliation against those reporting its violation." Id. (quoting Fleshner, 304 S.W.3d at 97). Instead, the relevant inquiry is "whether the authority clearly prohibits the conduct at issue in the action." Id.

In support of their motion, defendants first argue that because FINRA is not a governmental body, its rules cannot constitute public policy for a wrongful discharge claim. "Public policy" is defined by Missouri courts in the context of a wrongful discharge claim as "the principle of law which holds that no one can lawfully do that which tends to be injurious to the public or against the public

5

good." Fleshner, 304 S.W.3d at 91 (quoting Boyle v. Vista Eyewear, Inc., 700 S.W.2d 859, 871 (Mo. Ct. App. 1985)). Public policy may be found "in the state constitution, in the letter and purpose of a constitutional, statutory or regulatory provision or scheme, in the judicial decisions of the state and national courts, in the constant practice of the government officials, and, in certain instances, in professional codes of ethics." Boyle, 700 S.W.2d at 871 (collecting cases) (internal quotations and citations omitted); see also Hedrick v. Jay Wolfe Imports I, LLC, 404 S.W.3d 454, 459 (Mo. Ct. App. 2013) (noting that a clear statement of public policy may be found in a statute, regulation or a code of professional ethics).

The sources of authority in which public policy is found to support wrongful discharge claims are broad enough to encompass FINRA rules. FINRA's authority derives from an amendment to the Securities Exchange Act of 1934, 15 U.S.C. § 78s, which provided for the creation of a regulatory entity to supervise the securities industry subject to the oversight of the Securities and Exchange Commission (SEC). The rules promulgated by FINRA thus possess a sufficient connection to a federal statute and establish a vast regulatory scheme in the securities industry, so to constitute an appropriate source of public policy. Cf. Dunn v. Enterprise Rent-A-Car Co., 170 S.W.3d 1, 8 (Mo. Ct. App. 2005) (finding that the Securities Exchange Act of 1934 established a clearly mandated public policy requiring regulated companies to provide financial disclosures to investors). Defendant Benward held a FINRA broker's license, and his conduct was thereby professionally regulated by FINRA rules. His violation of those rules would be "injurious to the public or against the public good," and therefore provides a basis for plaintiff's wrongful discharge claim. Fleshner, 304 S.W.3d at 91.

Defendants next argue that because FINRA rules do not directly govern the actions of Hubbs Machine, they cannot be relied upon as public policy in plaintiff's wrongful discharge claim. Internal reporting to superiors of illegal actions by other employees, however, can constitute protected activity under the public policy exception in Missouri. Id. at 97 n. 13 ("[A]n employee who is fired for informing his superiors of wrongdoing by other employees is entitled to bring suit."). Missouri courts have not defined this exception as narrowly as defendants contend to require the employer to have directly violated or be directly regulated by the mandated public policy at issue. See id. at 97 (stating that the public policy exception to the at-will employment doctrine has "no requirement that the violation that the employee reports affect the employee personally, nor that the law violated prohibit or penalize retaliation against those reporting its violation"). The "pertinent inquiry is whether the authority clearly prohibits the *conduct* at issue," not whether the authority directly regulates the employer or employer's industry. Margiotta, 315 S.W.3d at 347 (emphasis added); see also Dunn, 170 S.W.3d at 10 (finding plaintiff could rely upon an alleged SEC violation for a wrongful discharge claim when the employer was in the rental car industry and not the securities market).

As a third basis for partial dismissal of Count I, defendants assert that the FINRA rules cited in plaintiff's complaint are vague and general, and so do not constitute clearly mandated public policy under Missouri law. "[N]ot every statute or regulation gives rise to an at-will wrongful termination action." Margiotta, 315 S.W.3d at 346. "A vague or general statute, regulation, or rule cannot be successfully pled under the at-will wrongful termination theory, because it would force the court to decide on its own what public policy requires." Id.

7

Generally, the cases in which courts in Missouri have found the public policy relied upon too vague or general, have reasoned that the cited provisions or rules did not involve a "clear mandate" of public policy from a valid source that would provide notice of any explicit legal obligations. See id. at 346-48 (holding that reporting unsafe patient practices at a hospital did not support plaintiff's wrongful discharge claim against the hospital, because no definite statute, regulation or rule was cited that clearly gave notice to the parties of its requirements); see also Frevert v. Ford Motor Co., 614 F.3d 466, 471 (8th Cir. 2010) (finding that a terminated employee who alleged wrongful discharge after making internal complaints about coworkers' violations of company policy failed to cite specific legal provisions that involved clear mandates of public policy).

For example, in Link v. K-Mart Corp., the court found that a plaintiff's "[v]ague reference to 'theft' and 'misuse of [the employer's] own property'" was insufficient to state a claim under the public policy exception, because no violation of any positive duty set forth by a well-established and clearly mandated public policy was alleged. 689 F. Supp. 982, 985 (W.D. Mo. 1988) (applying Missouri law). Similarly, where a plaintiff failed to plead "any specific criminal violations" and instead "pleaded generally that [the employer] was violating federal safety regulations" without "specify[ing] the regulations," the plaintiff's petition was dismissed, because "[t]here [was] no way, in view of the lack of specificity of the petition, to determine whether the violations amounted to serious misconduct endangering the safety of passengers or employees of the flight department or otherwise involved a clear mandate of public policy." Adolphsen, 907 S.W.2d at 338; see also Sivigliano, 188 S.W.3d at 49 (holding that the trial court correctly

dismissed the plaintiff's petition relying solely upon a company policy, because "[n]o legal provision, let alone a clear mandate of public policy, affirmatively appear[ed] from the face of [the plaintiff's] petition").

Here, Benward, as a FINRA-licensed broker, had notice of his obligations under the FINRA rules, a source of regulations beyond internal company policy. Hubbs Machine hired Benward as the company's president while he was concurrently employed as a broker at NY Life and managed Hubbs Machine's employee retirement and benefits plan. Hubbs Machine likewise cannot claim a lack of notice of Benward's obligations under FINRA rules while he held these dual roles. Furthermore, FINRA Rule 3270 contains a clear mandate. Rule 3270 provides that no registered person may receive compensation in the capacity as an employee, officer, or director "from any other person as a result of any business activity outside the scope of the relationship with his or her member firm" without prior notice. This rule qualifies as clearly mandated public policy against licensed brokers engaging in business activities that would create conflicts of interest. In contrast, FINRA Rule 2010 generally requires a member to "observe high standards of commercial honor and just and equitable principles of trade." This rule more closely resembles the kind of provisions other courts have found too vague and general to constitute a clearly mandated policy that creates a discernible, enforceable duty upon a party. Nevertheless, because Rule 3270 qualifies as a basis for the public policy exception, plaintiff is entitled to continue to rely upon FINRA for her wrongful discharge claim.

### (ii) Reporting Violations of Missouri Statutes and Regulations

Defendants argue that plaintiff has failed to plead sufficient facts demonstrating that Hubbs Machine violated the Missouri statutes and regulations cited in Count I.  For plaintiff to proceed on her claim that her actions fall within the public policy exception to the at-will employment doctrine, she must show both that she "harbored a good-faith belief" that the conduct in question violated the public policy at issue, and that "this good-faith belief was objectively reasonable."  Bazzi v. Tyco Healthcare Grp., LP, 652 F.3d 943, 948 (8th Cir. 2011).  Plaintiff cites to various Missouri statutes and regulations in her complaint, but fails to demonstrate how Benward's reported conduct violated any of the cited provisions.  The statutes cited within Chapter 409 of the Missouri Revised Statutes and its implementing regulations relate to the prohibition of fraud in securities transactions.  The Court agrees with defendants' contention that these statutes and regulations are inapplicable to Benward's alleged violations of public policy.  See Margiotta, 315 S.W.3d at 348 (declining to apply the public policy exception when the cited regulations did not specifically proscribe the incidents plaintiff reported).  Plaintiff has not alleged facts supporting a claim that Benward's conduct was fraudulent as proscribed by the cited Missouri statutes or regulations.

### B. Count II

In Count II, plaintiff asserts a claim of tortious interference with a business relationship against Benward.  In the complaint, plaintiff alleges that after Benward resigned from NY Life, he began retaliating against her because of the complaints she had made.  Plaintiff alleges that "[d]efendant Benward was involved in the decisions to subject Plaintiff Graham to these unwarranted disciplinary actions, reductions of duties and responsibilities and/or harassment."  *Complaint* ¶ 23 [Doc.

# 8]. She claims that Benward interfered with her business relationship with Hubbs Machine by "encouraging Defendant Hubbs Machine and William Hubbs to terminate [her] employment, discrediting [her] reputation and contributions to [the company] . . . and making unfounded allegations against [her] regarding her job performance . . . ." Id. at ¶ 39. Finally, plaintiff alleges that Benward's retaliatory actions were "contrary to the interests of Defendant Hubbs Machines [sic] and its business, and/or were purely motivated by Defendant Benward's own self-interest in maintaining his unlawful dual employment with Defendant Hubbs Machine and NY Life." Id. at ¶ 42.

"A claim for tortious interference with a contract or business expectancy requires proof of each of the following: (1) a contract or a valid business expectancy; (2) defendant's knowledge of the contract or relationship; (3) intentional interference by the defendant inducing or causing a breach of the contract or relationship; (4) absence of justification; and (5) damages resulting from defendant's conduct." Community Title Co. v. Roosevelt Fed. Sav. & Loan Ass'n, 796 S.W.2d 369, 372 (Mo. banc 1990). "An action for tortious interference with a business expectancy will lie against a third party only." Zipper v. Health Midwest, 978 S.W.2d 398, 419 (Mo. Ct. App. 1998). "Where the individual being sued is an officer or agent of the defendant corporation, the officer or agent acting for the corporation is the corporation for purposes of tortious interference." Id. Defendants argue that the tortious interference claim should be dismissed because Benward was an officer or agent of Hubbs Machine.

In support of their argument, defendants rely on Farrow v. Saint Francis Med. Ctr., 407 S.W.3d 579 (Mo. banc 2013). The plaintiff in that case, a nurse at a

11

hospital, brought a tortious interference claim against a doctor who had been her supervisor. The doctor had criticized the plaintiff's work performance, leading to the termination of her employment. Id. Plaintiff alleged that the doctor interfered with her business relationship with the hospital "without justification or excuse." Id. at 602. The Missouri Supreme Court held that plaintiff could not maintain a tortious interference claim for the following reasons:

> Farrow failed to allege facts supporting Doctor's lack of justification for the statements he made about her job performance. Doctor was Farrow's supervisor, and he had a legal right to criticize her work performance. Further, this action cannot be maintained against Doctor because while acting as Farrow's supervisor, he was Hospital's agent, not a third party.

Id. at 602-03. Plaintiff argues that there is an applicable exception to the general rule precluding a tortious interference claim against an officer or agent: when the officer/agent is acting for reasons of personal financial or other gain. See Preferred Physicians Mut. Mgmt. Grp. v. Preferred Physicians Mut. Risk Retention, 918 S.W.2d 805, 812 (Mo. Ct. App. 1996).

The Court finds Preferred Physicians inapposite. In that case, the tortious interference claim was brought by a company against one of its shareholders. The court ruled that the complaint sufficiently stated a claim, after examining the allegations in the context of the elements of the tort. Among other things, the court found that the allegation that the defendant had acted out of self-interest or for personal gain was sufficient to establish the element of absence of justification. Id. at 813. The dispute in the case was not about whether the defendant was a third party who could be held liable for tortious interference. By comparison, the instant case, like Farrow, involves a supervisor (Benward) who "had a legal right" to take the action complained of by plaintiff. Farrow, 407 S.W.3d at 602. While the

12

allegations that Benward was motivated by his personal interests may suffice to establish absence of justification, the fact remains that under controlling Missouri law, Benward was an agent of Hubbs Machine at the time he made the statements that led to her termination.  As such, Benward cannot be held liable for interfering with plaintiff's business relationship with the company. The Court concludes that Count II of the complaint fails to state a claim.

* * *

For the reasons set forth above,

**IT IS HEREBY ORDERED** that defendants' partial motion to dismiss for failure to state a claim pursuant to Fed. R. Civ. P. 12(b)(6) [Doc. #5] is **granted in part and denied in part.**

An order of partial dismissal will accompany this Memorandum and Order.

_____
CAROL E. JACKSON
UNITED STATES DISTRICT JUDGE

Dated this 19th day of February, 2015.